IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

EDWARD JEROME HENN,            )
                               )
                    Plaintiff, )
                               )
    vs.                        )
                               )
KILOLO KIJAKAZI, Acting Commissioner )
of Social Security,            )
                               )   No. 3:22-cv-0229-HRH
                    Defendant. )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381-1383f. Plaintiff Edward Henn has timely filed his opening brief[1] to which defendant, Kilolo Kijakazi, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

In February 2017, plaintiff filed applications for benefits under Title II and Title XVI, alleging that he became disabled on May 1, 2014. Plaintiff alleges that he is disabled due to back injury, shoulder injury, planter fasciitis, and mental instability. Plaintiff's applications

---

[1]Docket No. 19.

[2]Docket No. 21.

were denied initially, and he requested an administrative hearing. After a hearing on January 29, 2019, an administrative law judge (ALJ) denied plaintiff's applications on April 3, 2019. Plaintiff sought review by the Appeals Council, and on August 24, 2020, the Appeals Council remanded the matter for a second administrative hearing. After a hearing on July 21, 2021, the ALJ again denied plaintiff's applications. On August 24, 2022, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's August 24, 2021, decision the final decision of defendant. On October 19, 2022, plaintiff commenced this action for judicial review of defendant's final decision.

## General Background

Plaintiff was born on September 30, 1973. Plaintiff was 40 years old on his alleged onset of disability date. Plaintiff has a high school education. Plaintiff's past relevant work includes work as a paint salesman, an auto parts salesman, a third key or floating manager, and a transportation safety officer (shuttle driver).

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through September 30, 2017."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 18.

[4]The five steps are as follows:

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since May 1, 2014, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: spine disorder, status-post left shoulder arthroscopy, rotator cuff repair, and subscapular repair, osteoarthritis, bilateral carpal tunnel syndrome status-post releases, anxiety, and depression...."[6]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[4](...continued)
> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 18.

[6]Admin. Rec. at 18.

in 20 CFR Part 404, Subpart P, Appendix 1...."[7] The ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 11.14 (peripheral neuropathy), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).[8] The ALJ considered the "paragraph B" criteria and found that plaintiff had mild limitations in terms of understanding, remembering, or applying information, moderate limitations in terms of interacting with others, mild limitations in terms of concentrating, persisting, or maintaining pace, and moderate limitations in terms of adapting or managing oneself.[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could frequently push and pull bilaterally, occasionally climb ramps or stairs, and [should] avoid climbing ladders, ropes, or scaffolds. He could frequently balance and occasionally stoop, kneel, crouch, and crawl. He could frequently reach in all directions with the right upper extremity. He could occasionally reach overhead and frequently reach in all other directions with the left upper extremity. He could frequently handle, finger, and feel. He should avoid all exposure to unprotected heights and concentrated exposure to hazardous machinery. Mentally, he is

---

[7]Admin. Rec. at 18.

[8]Admin. Rec. at 18-19.

[9]Admin. Rec. at 19-20.

-4-

capable of occasional decision-making and changes in the work setting. He could tolerate only occasional interaction with the public.[10]

The ALJ discounted plaintiff's pain and symptom statements because they were inconsistent with the evidence.[11]

The ALJ gave significant weight to Dr. Lebeau's opinion.[12] The ALJ gave some weight to Shawn Frazier's opinion.[13] The ALJ gave some weight to Dr. Brown's opinion.[14]

---

[10] Admin. Rec. at 20.

[11] Admin. Rec. at 23.

[12] Admin. Rec. at 23. Dr. Lebeau, a medical expert at the first administrative hearing, opined that plaintiff could frequently lift/carry 10 pounds; occasionally lift/carry 20 pounds; could sit for 6 hours; could stand for 4 hours; could walk for 3 hours; could reach overhead on the left occasionally; could reach overhead on the right frequently; could lift chest high or lower on the right continuously; could lift chest high or lower on the left frequently; could push/pull frequently; could climb stairs/ramps occasionally; could never climb ladders/scaffolds; could frequently balance; could occasionally stoop, kneel, crouch, and crawl; could never be around unprotected heights; could occasionally be around moving mechanical parts; and could continuously operate a motor vehicle. Admin. Rec. at 52-53.

[13] Admin. Rec. at 23-24. On October 11, 2018, Dr. Shawn Frazier, PT, DPT, opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; could stand/walk for 2 hours; would need to alternate between sitting and standing throughout the work day; was limited as to push/pull; could frequently climb ramps, stairs, ladders, ropes, and scaffolds; could frequently kneel; and could occasionally stoop and crouch. Admin. Rec. at 1759-1760.

[14] Admin. Rec. at 24. On August 1, 2017, Dr. Roy Brown, a nonexamining source, opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 6 hours; could sit for 6 hours; was limited in his upper extremities as to push/pull; could frequently climb ramps/stairs/ladders/ropes/scaffolds; was unlimited as to balancing, kneeling, and crouching; could occasionally crawl; could frequently stoop; could occasionally reach overhead on the left; and should avoid concentrated exposure to hazards. Admin. Rec. at 127-128.

The ALJ gave partial weight to Dr. Valette's opinion.[15] The ALJ gave partial weight to Dr. McGinness' opinion.[16] The ALJ gave moderate weight to ANP Freer's April 2021 opinion[17] and little weight to her 2019 opinion.[18]

---

[15]Admin. Rec. at 24. Dr. Valette, a medical expert at the first administrative hearing, opined that plaintiff had no limitations as to understanding, remembering, or applying information; no limitations as to interacting with others; no limitations as to concentrating, persisting or maintaining pace; and no limitations as to adapting or managing oneself. Admin. Rec. at 42-43.

[16]Admin. Rec. at 24. On August 1, 2017, Dr. Clare McGinness opined that plaintiff had no mental medically determinable impairments. Admin. Rec. at 125.

[17]Admin. Rec. at 25. This opinion is discussed below in detail.

[18]Admin. Rec. at 25. On January 14, 2019, Freer opined that plaintiff had mild limitations in his ability to work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; moderate limitations in his ability to understand/remember/carry out very short and simple instructions and detailed instructions, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others; marked limitations in his ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and travel to unfamiliar places or use public transportation; and marked to extreme limitations as to his ability to tolerate normal levels of stress. Admin. Rec. at 1899-1901. Freer also opined that plaintiff's mental health symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks, that plaintiff might be able to handle a low-stress job, and that plaintiff would have "good days" and "bad days" but she could not predict how many "bad days" he would have each month. Admin. Rec. at 1901.

The ALJ considered the lay testimony of Waede and found it "partially consistent with the evidence."[19]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[20]

At step five, based on the testimony of the vocational expert at the second administrative hearing, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" including working as a garment marker, a hotel housekeeper, or a routing clerk.[21]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from May 1, 2014, through the date of this decision...."[22]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence

---

[19]Admin. Rec. at 21. Waede, plaintiff's friend, completed a third-party function report on April 17, 2017. Admin. Rec. at 506-512.

[20]Admin. Rec. at 26.

[21]Admin. Rec. at 26-27.

[22]Admin. Rec. at 27.

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in her evaluation of ANP Freer's April 29, 2021, opinion. ANP Freer was plaintiff's treating mental health provider. Freer began treating plaintiff in 2015[23] and generally saw plaintiff every two months.[24] On April 29, 2021, Freer opined that plaintiff had no limitations in his ability to carry out very short and simple instructions, make simple work-related decisions, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; mild limitations in his ability to remember locations and work-like procedures, understand/remember very short and

---

[23]Admin. Rec. at 862.

[24]Admin. Rec. at 1994.

-8-

Case 3:22-cv-00229-HRH   Document 23   Filed 06/29/23   Page 8 of 18

simple instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and be aware of normal hazards and take appropriate precautions; moderate limitations in his ability to understand/remember detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of and length of rest periods, and interact appropriately with the general public; and marked limitations in his ability to tolerate normal levels of stress.[25] Freer also opined that plaintiff's mental health symptoms would occasionally interfere with the attention and concentration needed to perform even simple work tasks.[26] In addition, Freer opined that plaintiff would only be capable of a low stress job because "his anxiety can be very difficult to manage[,]" and that he would miss more than four days per month due to his mental impairments.[27] Finally, she opined that she did not believe that plaintiff could work "on a regular and sustained basis (40 hours per week) in light of [his] mental impairment[.]"[28]

---

[25]Admin. Rec. at 1995-1997.

[26]Admin. Rec. at 1997.

[27]Admin. Rec. at 1997.

[28]Admin. Rec. at 1997.

-9-

The ALJ gave moderate weight to Freer's April 2021 opinion because she found that Freer's assessment of

> moderate limitations in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the public, and complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods [was] consistent with [plaintiff's] reports of depression and insomnia.[29]

The ALJ explained that plaintiff had "experienced daytime fatigue, irritability, and difficulty concentrating" and that "[h]e has mood swings during which he becomes overcome with sadness and tears up with[out] a reason."[30] The ALJ also pointed out that plaintiff "presented to therapy with complaints of anxiety, depression, and anxiety attacks."[31] But, the ALJ only gave Freer's April 29, 2021, opinion moderate weight because plaintiff's "mental status examination findings have generally been unremarkable."[32]

"For Social Security applications filed before March 27, 2017," such as plaintiff's, "under the 'treating physician rule,' '[t]he medical opinion of a claimant's treating doctor is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

---

[29]Admin. Rec. at 25.

[30]Admin. Rec. at 25.

[31]Admin. Rec. at 25.

[32]Admin. Rec. at 25.

in [the claimant's] case record.'" D.T. v. Comm'r of Soc. Sec., 538 F.Supp.3d 952, 956 (N.D. Cal. 2021) (quoting Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017)). "When a treating physician's opinion is contradicted by another physician, an ALJ must provide 'specific and legitimate reasons' for rejecting or discounting the treating physician's opinion, supported by substantial evidence." Id. at 956-57 (quoting Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017)). But, "[o]nly physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)). "Nurse practitioners[,]" such as Freer, "are considered 'other sources'" or non-acceptable medical sources. Id. (quoting 20 C.F.R. § 404.1513(d)). "While their opinions must still be evaluated, 20 C.F.R. § 404.1527(c), the ALJ may 'discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" Id. (quoting Molina, 674 F.3d at 1111).

Plaintiff argues that there were several problems with the ALJ's assessment of Freer's April 29, 2021, opinion. First, plaintiff argues that the ALJ failed to consider the factors in § 404.1527 when assessing Freer's opinion. An ALJ is required to consider "[o]pinions from medical sources who are not acceptable medical sources" using the factors in § 404.1527. 20 C.F.R. § 404.1527(f). These "factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating [source]; and the 'nature and extent of the treatment relationship' between the patient and the treating [source]." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Other factors the

-11-

Case 3:22-cv-00229-HRH   Document 23   Filed 06/29/23   Page 11 of 18

ALJ may consider are supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c)(3)-(5). Failure to consider these factors is "reversible legal error." Trevizo, 871 F.3d at 676.

Plaintiff argues that in rejecting portions of Freer's April 29, 2021, opinion, the ALJ failed to consider that Freer had treated plaintiff for six years and that she generally saw him every two months. Plaintiff also argues that the ALJ failed to acknowledge that Freer was the only treating or examining source who offered an opinion as to the limitations flowing from his depression and anxiety and that Freer is a psychiatric nurse practitioner.

As defendant acknowledges, the ALJ "did not discuss each of the factors in the context of each [medical] opinion."[33] But, it is sufficient that the ALJ stated that she had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527...."[34] As the Ninth Circuit has noted, "[t]he agency was not required to specifically reference each factor listed in 20 C.F.R. § 404.1527(c)." Harris v. Colvin, 584 Fed.Appx. 526, 528, n.1 (9th Cir. 2014). The ALJ did not err by failing to expressly discussing each factor listed in § 404.1527(c) when evaluating Freer's April 29, 2021, opinion.

Next, plaintiff takes issue with the ALJ's rejection of portions of Freer's opinion, and in particular, Freer's opinion that plaintiff would miss more than four days of work per month due to his mental impairments. The only reason the ALJ gave for rejecting any

---

[33]Defendant's Responsive Brief at 4, Docket No. 21.

[34]Admin. Rec. at 20.

-12-

portion of Freer's April 29, 2021, opinion was that plaintiff's mental status exam findings were generally unremarkable. Plaintiff argues that this was not an adequate reason for rejecting any portion of Freer's opinion. Plaintiff argues that the record as a whole shows that he was often "feeling anxious," had ongoing anxiety, or was anxious on exam.[35] Plaintiff argues that these findings are consistent with Freer's opinion that he would likely miss more than four days of work per month. Plaintiff also points out that Freer's own notes document his ongoing anxiety[36] and that Freer expressly relied on his anxiety when forming her April 29, 2021, opinion.[37]

Because Freer was a non-acceptable medical source, the ALJ was only required to give a germane reason for rejecting portions of Freer's opinion. Plaintiff's unremarkable mental status exams was such a reason. Freer's mental status exam showed that plaintiff was cooperative and attentive, had normal speech, good insight and judgment, intact thought processes, and intact memory.[38] And, treatment notes from other providers showed that

---

[35]Admin. Rec. at 869, 872, 899; 938; 953; 1309; 1362; 1387; 1434; 1438; 1443; 1448; 1453; 1458; 1464; 1469; 1473; 1483; 1924; 1926; 1929; 1930; 1931; 1932; 1939; 1940.

[36]Admin. Rec. at 848, 852, 853, 859, 865, 1924, 1925, 1926, 1929, 1931, 1932, 1937-1943, 1946.

[37]Admin. Rec. at 1944, 1997.

[38]Admin. Rec. at 864.

plaintiff has no problem with memory,[39] had an average fund of knowledge,[40] was cooperative,[41] was pleasant,[42] had normal attention and concentration,[43] had coherent thought processes,[44] and normal insight and judgment.[45] The ALJ did not err in rejecting portions of Freer's April 29, 2021, opinion.

Plaintiff next argues that the ALJ erred in her evaluation of Freer's April 29, 2021, opinion because the ALJ accepted Freer's opinion that plaintiff had moderate limitations in his ability to maintain attention and concentration for extended periods and perform at a consistent pace without an unreasonable number of and length of rest periods, but the ALJ then failed to include these limitations in his RFC and did not explain why they were not included. In short, plaintiff argues that the ALJ failed to include limitations that Freer assessed after the ALJ accepted those limitations.

The ALJ found that Freer's assessment of

> moderate limitations in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the public, and

---

[39] Admin. Rec. at 869, 1175, 1181, 1225, 1588.

[40] Admin. Rec. at 1175, 1229, 1237.

[41] Admin. Rec. at 807, 1181, 1207, 1229, 1237, 1277, 1363, 1815, 1882.

[42] Admin. Rec. at 1175, 1348, 1378.

[43] Admin. Rec. at 1434, 1483, 1822, 1919.

[44] Admin. Rec. at 1175, 1205, 1236, 1882.

[45] Admin. Rec. at 779, 807, 1208, 1237, 1277, 1860.

-14-

> complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods [was consistent with the evidence].[46]

But, the ALJ did not include any of these limitations in plaintiff's RFC, despite twice stating that she was relying on Freer's April 29, 2021, "treating source statement[,]" in which Freer "assessed mild to moderate mental functional limitations."[47] Rather, the ALJ found that mentally, plaintiff was "capable of occasional decision-making and changes in the work setting. He could tolerate only occasional interaction with the public."[48] This RFC did not address plaintiff's limitations, as assessed by Freer and accepted by the ALJ, related to concentration, persistence, and pace. In other words, the RFC was incomplete. See Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (RFC must include all "limitations supported by substantial evidence").

This error was not harmless. An error is harmless if it is "'inconsequential to the ultimate nondisability determination.'" Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)). The incomplete RFC was the basis for the ALJ's second hypothetical given to the vocational expert at the second administrative hearing.[49] But, this hypothetical was inaccurate because the RFC was

---

[46]Admin. Rec. at 25.

[47]Admin. Rec. at 24-25.

[48]Admin. Rec. at 20.

[49]Admin. Rec. at 108-111.

incomplete. "When the ALJ's question to a vocational expert <u>inaccurately</u> describes the claimant's true limitations, ... then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" Leach v. Kijakazi, ---F.4th ---, 2023 WL 4008893, at *2 (9th Cir. 2023) (quoting Bray, 554 F.3d at 1228). "In that situation, 'the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.'" Id. (quoting Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012)). Thus, the ALJ's failure to accurately summarize plaintiff's mental limitations was not harmless.

Plaintiff next argues that the ALJ erred in denying his request to obtain testimony from a medical expert at his second administrative hearing. Because plaintiff's claim was filed prior to March 27, 2017, SSR 96-6p governs the question of whether the ALJ should have called a medical expert at the second administrative hearing. SSR 96-60 provides that

> an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert ... [w]hen additional medical evidence is received that in the opinion of the administrative law judge ... may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Dr. Valette, a medical expert, testified at the first administrative hearing that plaintiff did not meet or equal Listings 12.04 and 12.06.[50] After the first administrative hearing, additional evidence related to plaintiff's mental impairments was made part of the record.

---

[50]Admin. Rec. at 43.

This evidence included Freer's April 29, 2021, opinion, and additional mental health treatment records.[51] Thus, plaintiff argues that the ALJ should have called a medical expert at the second administrative hearing rather than relying on Dr. Valette's testimony from the first hearing. Plaintiff makes much of the fact that Dr. Valette's opinion was based on a partial record, and plaintiff points out that this court has noted that Dr. Valette is "'no longer an eligible impartial examiner for the Social Security Administration.'" Ruby N. v. Saul, Case No. 3:20-CV-00037-TMB, 2020 WL 13580429, at *15 (D. Alaska Oct. 19, 2020) (quoting Smith v. Saul, No. 3:19-cv-00123-RRB, at 6 (D. Alaska, Jan. 27, 2020)).

It was within the ALJ's discretion to decide whether the additional medical evidence warranted calling a medical expert to testify at the second administrative hearing. A discretionary decision such as this "is not final and, thus, is not generally reviewable by a district court." Klemm v. Astrue, 543 F.3d 1139, 1144 (9th Cir. 2008). Although it is the court's perception that it would have been helpful to call a medical expert at the second administrative hearing, the court will not review the ALJ's discretionary decision to not do so.

Because the ALJ erred as to Freer's April 29, 2021, opinion, the court must consider whether to remand this matter for further proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).

---

[51]Admin. Rec. at 1896-1946.

-17-

Case 3:22-cv-00229-HRH   Document 23   Filed 06/29/23   Page 17 of 18

"Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

Here, a remand for further proceedings is appropriate so that the ALJ can formulate a complete RFC that includes all of the limitations flowing from plaintiff's mental health impairments.

## Conclusion

The final decision of defendant is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 29th day of June, 2023.

/s/ H. Russel Holland
United States District Judge